# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BRANDY W.,

    **Plaintiff,**

**v.**

**KILOLO KIJAKAZI,** *Acting*
*Commissioner, Social Security*
*Administration,*[1]

    **Defendant.**

**CIVIL ACTION FILE**

**NO. 1:20-cv-02990-AJB**

## <u>ORDER AND OPINION</u>[2]

Plaintiff Brandy W. brought this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her applications for social security disability insurance benefits ("DIB")

---

[1]    Kilolo Kijakazi is now the Acting Commissioner of the Social Security Administration. Under the Federal Rules of Civil Procedure, Kijakazi "is automatically substituted as a party." Fed. R. Civ. P. 25(d). The Clerk is hereby **DIRECTED** to amend the case style to reflect the substitution.

[2]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* Dkt. Entry dated Sept. 8, 2020). Therefore, this Order constitutes a final Order of the Court.

and supplemental security income ("SSI") under the Social Security Act.[3]  For the

reasons set forth below, the Court **AFFIRMS** the final decision of the

Commissioner.

## I.   <u>PROCEDURAL HISTORY</u>

Plaintiff filed applications for DIB and SSI on or around June 12, 2015,

alleging disability commencing on June 7, 2015.  [Record (hereinafter "R") 525,

529].   Plaintiff's applications were denied initially and on reconsideration.

[R397-404, 408-413].  Plaintiff then submitted an untimely request for a hearing

before an Administrative Law Judge ("ALJ") along with a statement of good cause,

which was dismissed.  [R391-92, 414-18].  The Appeals Council reversed the

---

[3]      Title II of the Social Security Act provides for federal DIB.
42 U.S.C. § 401 et seq.  Title XVI of the Social Security Act, 42 U.S.C. § 1381,
et seq., provides for Supplemental Security Income Benefits for the disabled
("SSI").  Unlike DIB claims, SSI claims are not tied to the attainment of a particular
period of insurance eligibility.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350
(N.D. Ga. 1982).   Otherwise, the relevant law and regulations governing the
determination of disability under a claim for DIB are nearly identical to those
governing the determination under a claim for SSI.   *Wind v. Barnhart*,
133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*,
800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).  Thus, in general, the legal standards to
be applied are the same regardless of whether a claimant seeks DIB, to establish a
"period of disability," or to recover SSI, although different statutes and regulations
apply to each type of claim. *See* 42 U.S.C. § 1383(c)(3) (establishing that the
judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI).
Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations,
they are equally applicable to Plaintiff's DIB claims.

2

ALJ's dismissal, and an evidentiary hearing was held on August 21, 2019. [R393, 38-61]. The ALJ issued a decision on September 17, 2019, denying Plaintiff's application on the ground that she had not been under a "disability" at any time through the date of the decision. [R12-31]. Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on May 15, 2020, making the ALJ's decision the final decision of the Commissioner. [R1-6].

Plaintiff then filed her action in this Court on July 18, 2020, seeking review of the Commissioner's decision. [Docs. 1, 6]. The answer and transcript were filed on January 11, 2021. [Docs. 14, 15]. On April 13, 2021, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 20]; on May 13, 2021, the Commissioner filed a response in support of the decision, [Doc. 21]; and on May 27, 2021, Plaintiff filed a reply brief in support of her petition for review of the Commissioner's decision, [Doc. 22]. The parties did not request oral argument. [*See* Dkt.]. The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and it is accordingly ripe for review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if she is unable to "engage in any substantial gainful activity by reason of any medically

3

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)-(3).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. 20 C.F.R. § 404.1512(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. 20 C.F.R. § 404.1520(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *superseded by* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000),[4] *on other grounds as*

---

[4]    Social Security Rulings are published under the authority of the Commissioner of Social Security and are binding on all components of the

4

*stated in Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360-61 (11th Cir. 2018).  The claimant must prove at step one that she is not undertaking substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments that significantly limits her ability to perform basic work-related activities.  20 C.F.R. § 404.1520(a)(4)(ii).  At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(iii).  At step four, if the claimant is unable to prove the existence of a listed impairment, she must prove that her impairment prevents performance of past relevant work.

———————————————

administrative process.  *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F. Supp. 2d 330,   338-39   (S.D.N.Y.   2001);   *Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1377 n.6 (N.D. Ga. 2006) (Story, J.) (citing 20 C.F.R. § 402.35(b)(1)).  Although SSRs do not have the force of law, they are entitled to deference so long as they are consistent with the Social Security Act and regulations.  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); *Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 832 (6th Cir. 2000) ("If a Social Security Ruling presents a reasonable construction of an ambiguous provision of the Act or the agency's regulations, we usually defer to the SSR."); *Minnesota v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998) ("Social Security Rulings, although entitled to deference, are not binding or conclusive."); *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995); *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995); *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).

20 C.F.R. § 404.1520(a)(4)(iv).     At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity ("RFC"), age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work.   20 C.F.R. § 404.1520(a)(4)(v).   The claimant's RFC is the most that she can still do despite her limitations and is assessed after an evaluation of the relevant record evidence.     20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (a)(3).  The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform.  *Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Id*.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. 20 C.F.R. § 404.1520(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that she is unable to engage in any substantial gainful activity that exists in the national economy.  *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd*., 921 F.2d 1210, 1214 (11th Cir. 1991).

III.   **SCOPE OF JUDICIAL REVIEW**

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.   Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).   The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).   If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive.   *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.  It means such relevant evidence

7

as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239.   "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."   *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam).   Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.   *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).   In contrast, review of the ALJ's application of legal principles is plenary.   *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## IV.   **PLAINTIFF'S CLAIMS AND THE ALJ'S DECISION**

Plaintiff Brandy Wilcoxson was 36 years old on the alleged onset date and was 41 years old at the time of the ALJ's decision.   [R22].   She has a high school education and a limited work history.   [R22].   Plaintiff has performed past relevant work as a fast-food worker, store laborer, and a fast-food manager.   [R29-30].   Plaintiff alleges disability as of June 7, 2015, due mostly to neck and back injuries.   [R22].

8

A.    *ALJ Hearing*

At the hearing before the ALJ on August 21, 2019, Plaintiff's counsel stated that Plaintiff was disabled under Listing 1.04 due to cervical spondylosis[5] and lumbar bulging discs.[6]  [R43].  Plaintiff testified that she was currently employed as a security officer at a school for adults obtaining their GEDs, working four days per week for three hours each shift.  [R44-45].  Plaintiff also testified that in the preceding years, she had a cleaning business, but her son performed the cleaning jobs for her, and that she had been a fast-food manager before getting injured.  [R45-46].  Plaintiff stated that she had also worked at a Chico's warehouse as a packer.  [R46-47].

Next, Plaintiff testified that her initial neck and back injuries occurred in 2015 when she was tased in her left shoulder by a police officer and was forced to the ground and held with a knee pressed into her back.  [R47].  She stated that, on

---

[5]    Spondylosis is a general term for age-related wear and tear affecting the spinal disks of the neck.  As the disks dehydrate and shrink, osteoarthritis develops, which can cause pain and stiffness in the neck.  Mayo Clinic, *Cervical Spondylosis*,    https://www.mayoclinic.org/diseases-conditions/cervical-spondylosis/symptoms-causes/syc-20370787 (last visited Feb. 9, 2022).

[6]    Bulging discs, also known as herniated discs, occur when all or part of a disc is forced through a weakened part of the disc, which places pressure on nearby nerves or the spinal cord.  Medline Plus, *Herniated Disk*, https://medlineplus.gov/ency/article/000442.htm (last visited Feb. 9, 2022).

a later occasion, her son was assaulted, which led to her breaking four bones in her neck.[7]  [R48].  Plaintiff testified that she then fell down a flight of metal steps in 2016.  [R48].  She testified that, as a result of these incidents, she was not able to stand for more than 20 minutes at a time before she needed to lie down for about 30 minutes.  [R48].  Plaintiff testified that she could walk about 20 paces with a cane or 10 paces without a cane.  [R49].  She stated that she began using the cane after her first mesh hernia repair to help with her balance, since her abdominal pain caused her to lean forward.  [R49].

Plaintiff additionally testified that as a security officer, her employer allowed her to sit and lay down as needed.  [R50].  She stated that she had not tried to work more than three hours per day but that she thought she could do more, "[w]ith the risk of needing to have [her] meds when [she] gets home."  [R50].  Plaintiff testified that she had called out of work about six times in the year that she had worked there, but due to fibromyalgia,[8] not her neck or back pain.  [R50-51].  She stated that a fibromyalgia flare up could last 45 minutes to an hour, or it could require her to

---

[7]     The Court's review of the record did not reveal any evidence supporting Plaintiff's statement that she broke four bones in her neck.

[8]     Mayo Clinic, *Fibromyalgia*, https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780 (last visited Feb. 10, 2022).

stay in bed all day.  [R51].  Plaintiff testified that she could not raise her left arm above her head but had full mobility in her right arm and could lift at most 10 pounds due to the mesh in her abdomen.  [R51-52].  She stated that she had no abdominal pain prior to her hernia surgery and that, since then, it felt like all four corners of the mesh were cutting her inside and that the mesh felt like it shifted. [R52].  Plaintiff testified that her doctor would not remove the mesh and instead suggested pain management.  [R52-53].

Next, Plaintiff stated that a series of pain injections had increased her range of motion on the left side of her neck and allowed her to be able to sit and stand with her back pain.  [R53].  She testified that she had peripheral neuropathy in her left shoulder as a result of being tased that reduced her strength and extension abilities in her left hand and arm.  [R53-54].  Plaintiff stated that when she was not at work, she spent her time "laying around," that she had her children do chores and help her with grocery shopping, and that she was able to drive some.  [R54]. Plaintiff also testified that she did not have issues getting along with people but sometimes had issues with concentration because she worried a lot.  [R55]. She stated that her primary care doctor managed her mental health treatment and that she was on medication for her mental health.  [R56].

A vocational expert ("VE") testified that Plaintiff's past work as a fast-food worker was light, unskilled work; her work as a store laborer was medium-level, unskilled work; and her work as a fast-food manager was light, skilled work. [R58]. The ALJ asked the VE to assume, hypothetically, a person of Plaintiff's age, education, and work experience who was limited to work at the light exertional level, but who could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; could understand, remember, and carry out only simple instructions; and could have only occasional contact with the public. [R58]. The VE testified that the hypothetical individual would not be able to perform Plaintiff's past work but would be able to perform the representative jobs of housekeeper, power screwdriver operator, and poultry dresser. [R58-59].

The ALJ then asked the VE to alter the hypothetical by assuming that a second hypothetical individual had all of the limitations as the first individual, but also could not sit for more than 30 minutes at a time or for more than 4 hours of an 8-hour workday; and could stand and walk in combination for no more than 20 minutes at a time and for no more than 2 hours of an 8-hour workday. [R59]. The VE testified that the second individual would be precluded from competitive work. [R59]. Plaintiff's counsel then questioned the VE, asking the VE to alter the first

12

hypothetical by assuming that the individual would need to use her dominant hand to stand and ambulate on all terrains, and the VE testified that that limitation would preclude the individual from performing the listed jobs.  [R59-60].

  *B.* *Medical Record Evidence*

  Plaintiff provided medical record evidence and other evidence in support of her claim.  On April 13, 2014, Plaintiff visited an emergency room ("ER") after suffering injuries from an assault.  [R1352-53].  The ER physician diagnosed her with a shoulder sprain and a facial contusion, noted decreased range of motion in her left shoulder, and prescribed her Ultram.[9]  [R1353-56].  On December 31, 2014, Plaintiff was seen at Our Family Health Center for a follow-up visit for "chronic neck and shoulder pain."  [R676].  She stated that her pain had improved until she went back to work, and after doing some lifting, she felt sharp pain in the upper portion of her neck that radiated down her arm and into her back.  [R676].  An examination revealed that she had decreased range of motion in her cervical spine and tenderness in the left side of her neck and trapezius muscles.  [R677].  She was

---

[9] Ultram is a brand name for Tramadol, which is an opiate medication used to relieve moderate to moderately severe pain.  Medline Plus, *Tramadol*, https://medlineplus.gov/druginfo/meds/a695011.html (last visited Feb. 10, 2022).

13

prescribed tizanidine[10] and gabapentin[11] for her pain and referred to physical therapy.  [R677].

On February 9, 2015, Plaintiff was seen by Dr. Ramon Espinal for the treatment of cervical pain.  [R794].  Plaintiff reported feeling depressed and hopeless and was diagnosed with moderately severe depression, with Dr. Espinal noting that she had been previously prescribed Prozac.[12]  [R794-95].  Dr. Espinal noted that Plaintiff's pain moved from her left shoulder, down her forearm and into her fingers, and was rated as a 9 out of 10 on a pain scale.  [R794].  Dr. Espinal noted that over the counter pain relievers had not helped and that Plaintiff's pain was aggravated by sitting, standing, walking, bending, lifting, and lying down.  [R794].  Examination revealed left facet tenderness, muscle spasms and pain with

_____

[10]     Tizanidine is a medication used to relieve muscle spasm caused by spinal injuries, among other causes, and works by slowing action in the brain and nervous system to allow the muscles to relax.  Medline Plus, *Tizanidine*, https://medlineplus.gov/druginfo/meds/a601121.html (last visited Feb. 10, 2022).

[11]     Gabapentin is a medication used to treat pain by changing the way the body senses pain.  Medline Plus, *Gabapentin*, https://medlineplus.gov/druginfo/meds/a694007.html (last visited Feb. 10, 2022).

[12]     Prozac is a brand name for fluoxetine, which is a medication used to treat depression by increasing the amount of serotonin in the brain.  Medline Plus, *Prozac*, https://medlineplus.gov/druginfo/meds/a689006.html (last visited Feb. 10, 2022).

14

flexion.  [R795].  Dr. Espinal diagnosed Plaintiff with cervical radiculopathy[13] and cervical disc displacement, and prescribed Percocet.[14]  [R796].  Plaintiff also received epidural steroid injections for her pain in February and March 2015. [R786-87, 790-91].

On April 15, 2015, Plaintiff was treated by Nurse Practitioner Kelly McDowell for neck pain, reporting that her pain was a 10 out of 10 on a pain scale. [R782].  Plaintiff reported that she was unable to afford the Percocet prescription and only took gabapentin.  [R782].  On May 26, 2015, Plaintiff was examined by Dr. Espinal again, reporting her pain as a 9 out of 10 on the pain scale.  [R778]. Dr. Espinal noted again that Plaintiff had left facet tenderness, decreased range of motion, muscle spasms, and pain with extension and flexion.  [R780].  Dr. Espinal also noted that Plaintiff's affect and mood were depressed.  [R780].

---

[13]     Cervical radiculopathy is commonly known as a pinched nerve and occurs when a nerve in the neck is compressed or irritated at the junction where it branches away from the spinal cord.  This may cause pain and muscle weakness radiating into the shoulder and/or arm.  OrthoInfo, *Cervical Radiculopathy (Pinched Nerve)*,  https://orthoinfo.aaos.org/en/diseases--conditions/cervical-radiculopathy-pinched-nerve/ (last visited Feb. 10, 2022).

[14]     Percocet is the brand name for a combination of acetaminophen and oxycodone, which is an opiate pain reliever used to relieve moderate to severe pain. Medline                              Plus,                         Oxycodone, https://medlineplus.gov/druginfo/meds/a682132.html#brand-name-1 (last visited Feb. 10, 2022).

On May 31, 2015, Plaintiff visited an emergency room after falling down a flight of steps, reporting injuries to her head, neck, and back.  [R705].  Plaintiff reported tingling and decreased sensation on the left side of her body, with the attending provider noting she appeared to be in a moderate to severe amount of pain.  [R705-06].  The provider noted that Plaintiff did not have any bruising, abrasions, or lacerations, but had tenderness in her cervical and upper spine, decreased range of motion, 3 out 5 grip strength in her left hand, 5 out of 5 grip strength in her right hand, 1 out 5 left flexion strength, and 5 out of 5 right flexion strength.  [R707].  Scans of Plaintiff's spine showed no fractures or abnormalities except a mild bulging disc at the LR-L5 junction with mild stenosis.[15]  [R709-12].  Additional examinations with Dr. Espinal and NP McDowell in June 2015 reiterated Plaintiff's neck and back pain, tenderness in her spinal facets, decreased range of motion, and muscle spasms, with Plaintiff reporting that her medications and physical therapy had not helped her pain.  [R762, 764-65, 775-77].  On a June 26, 2015 visit, she reported her pain as a 6 out of 10 on a pain scale.  [R765].

_____

[15]    Spinal stenosis is a condition causing narrowing of the spine, which puts pressure on the nerves and spinal cord and can cause pain.  Medline Plus, *Spinal Stenosis*, https://medlineplus.gov/spinalstenosis.html (last visited Feb. 10, 2022).

On December 17, 2015, Plaintiff was seen by Dr. Dharmeshkumar Patel for a referral to a spine specialist.  [R1418].  Dr. Patel noted that Plaintiff stated she was feeling depressed and had been compliant on her medications.  [R1418].  In July 2016, Plaintiff was treated at an ER for back pain after someone stepped on her lower back, with the attending provider noting her symptoms were moderate at their worst.    [R1347].    Plaintiff was prescribed diclofenac sodium [16] and cyclobenzaprine. [17]  [R1347].  Plaintiff was seen again in September 2016 by Dr. Sheila Kennedy, who noted Plaintiff reported chest and back pain and that she appeared uncomfortable, fatigued, and anxious.  [R1409-10].  Dr. Kennedy also noted that Plaintiff reported not feeling depressed at that visit.  [R1409].

At an August 2016 visit with Dr. Thomas Johnson, Plaintiff was noted to have an epigastric ventral abdominal wall hernia.[18]  [R1345].  Plaintiff had two hernias repaired laparoscopically in September 2016 and, at a follow-up

---

[16]      Diclofenac sodium is a prescription nonsteroidal anti-inflammatory drug used to relieve pain and swelling.  Medline Plus, *Diclofenac Sodium Overdose*, https://medlineplus.gov/ency/article/002630.htm (last visited Feb. 10, 2022).

[17]      Cyclobenzaprine is a skeletal muscle relaxant.    Medline Plus, *Cyclobenzaprine*,      https://medlineplus.gov/druginfo/meds/a682514.html      (last visited Feb. 10, 2022).

[18]      A hernia happens when part of an internal organ or tissue bulges through a weak area of muscle, most commonly in the abdomen.  Medline Plus, *Hernia*,  https://medlineplus.gov/hernia.html (last visited Feb. 10, 2022).

appointment with Dr. Christopher Ibikunle, she reported her pain was between a 7 and a 9 out of 10 on a pain scale when she moved. [R1443-45]. Plaintiff was seen by Dr. Kennedy again in November 2016 for back pain and reported that her pain worsened with ambulation, so she intermittently used a cane. [R1406]. In May 2017, Dr. Patel examined Plaintiff again and performed a depression screening, noting that Plaintiff had moderate depression and often had trouble concentrating. [R1403]. Dr. Patel's physical examination showed tenderness on palpation of Plaintiff's lower spine and pain with range of motion, for which he prescribed naproxen.[19] [R1404-05].

In August and September 2017, Plaintiff was examined for gynecology concerns, with Plaintiff reporting no pain at the August visit and the treating physician reporting that Plaintiff had no acute distress, was well nourished, and had no depressive feelings at the September visit. [R1544-47]. In October 2017, Plaintiff was seen by Dr. John Houser for anxiety, for which he continued her prescription for Prozac, noting that Plaintiff reported her pain as a 3 out of 10 on a pain scale but was negative for back pain. [R1531-34]. In December 2017,

---

[19]    Naproxen is a nonsteroidal anti-inflammatory medication used to relieve pain, tenderness, swelling, and stiffness. Medline Plus, *Naproxen*, https://medlineplus.gov/druginfo/meds/a681029.html (last visited Feb. 10, 2022).

Plaintiff was again seen by Dr. Houser for anxiety and depression, who refilled her Prozac prescription, and at another visit in March 2018, Plaintiff reported neck stiffness and pain when turning her head, which she rated as a 10 out of 10 on a pain scale. [R1523-29]. Dr. Houser also noted in the March 2018 visit that Plaintiff's range of motion in her cervical spine was normal. [R1524].

C. _Opinion Evidence_

In August 2015, Dr. Alton Greene performed a consultative examination of Plaintiff for the purpose of a state disability determination. [R821]. Dr. Greene noted that Plaintiff had cervical pain and difficulty that was constant and made worse by lying down, turning and moving her head, and sleeping. [R821-22]. Dr. Greene noted that her prescribed pain medication provided some relief. [R822]. Dr. Greene further noted that Plaintiff had lumbar pain that was intermittent and made worse by prolonged standing, bending, walking, and sitting, with some relief afforded by pain medication and sitting down. [R822]. Dr. Greene noted that Plaintiff's most severely affected area was her cervical spine and that she had radiating pain and tingling in her extremities. [R822].

Dr. Greene next reported that Plaintiff did not need a cane to ambulate and that she could walk a very short distance, could stand for approximately 5 minutes at a time, could lift up to 10 pounds, could climb less than 1 flight of stairs, and had

difficulty with household chores. [R822]. Dr. Greene observed that Plaintiff could get out of a chair and on and off the examination table without difficulty, and also ambulated without difficulty. [R823]. Dr. Greene observed spasms in Plaintiff's spinal muscles and negative straight leg raising tests with no pain. [R824]. Dr. Greene noted that Plaintiff could walk on her toes and heels, could squat to the floor and recover, and could perform tandem heel walking, but had difficulty bending over and touching her toes. [R824].

Next, Dr. Greene observed that Plaintiff had 5 out 5 grip strength in both hands and had normal fine and gross manipulative skills in both hands. [R824, 829]. Dr. Greene observed that Plaintiff had reduced range of motion in her cervical and lumbar spine but normal range of motion in her other joints and extremities. [R825, 827-28]. As a result, Dr. Greene opined that Plaintiff had a limited ability to reach, handle, or grasp. [R825].

In August 2019, Dr. Houser completed a pain evaluation form stating that Plaintiff had lower back pain rated at an 8 to 9 out of 10 on a pain scale that had persisted since 2015. [R1575]. Dr. Houser opined that Plaintiff's pain would interfere with her attention and concentration, as required for simple work tasks, approximately 34 to 66 percent of an 8-hour workday. [R1575]. Dr. Houser also

opined that Plaintiff could perform only minimal work activities for short periods of time.  [R1575].

The ALJ subsequently issued the decision in which he found that Plaintiff was not "disabled" within the context of the Social Security regulations.  [R15-31]. In doing so, the ALJ made the following findings of fact conclusion of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2.  The claimant has not engaged in substantial gainful activity since June 7, 2015, the alleged onset date (20 C.F.R. §§ 404.1571 et seq., and 416.971 et seq.)

    . . .

3.  The claimant has the following severe impairments: degenerative disc disease, post hernia repair, obesity, depression (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

    . . .

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    . . .

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she should never climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and

21

crawl; and she is limited to understanding, remembering, and carrying out simple instructions only, and occasional contact with the public.

. . .

6.     The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

. . .

7.     The claimant was born on June 17, 1978 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a).

. . .

11.    The claimant has not been under a disability, as defined in the Social Security Act, from June 7, 2015, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

[R17-31].

As relevant, the ALJ explained that Plaintiff appeared to have engaged in substantial gainful activity via her work as a security officer, based on her earnings

22

in 2018 and 2019, which the ALJ noted would support a denial of her claim.  [R18]. The ALJ noted Plaintiff's testimony that her security officer position allows her to sit and lay down as needed, while her employer testified that she was permitted to take breaks as required and could freely sit and stand.  [R18].  The ALJ found the employer's statements that Plaintiff may require some sort of job accommodation and that there are days where she is unable to work to be "vague and undefined for indicating actual functional limitations due to a medically determinable impairment." [R18].  The ALJ therefore declined to give the employer's statements any weight.  [R18].

The ALJ presumed, however, based on the testimony regarding accommodations that the employer provided to Plaintiff, that Plaintiff's ongoing employment was not substantial gainful activity, and proceeded with the sequential evaluation.  [R18].  The ALJ noted that Plaintiff had achieved a weight loss goal, but concluded nonetheless that in combination with her allegations of back pain and history of abdominal pain after a hernia repair that her history of obesity had a further limiting effect on her ability to perform basic work activities, and was therefore severe.  [R19].  The ALJ next found that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria in Listing 12.04.  [R19]. The ALJ concluded that Plaintiff had mild limitations with understanding,

23

remembering, and applying information, noting that she had been prescribed Prozac intermittently for mild major depressive disorder. [R19-20]. The ALJ noted that there was no ongoing complaint of depression in the record, that treatment records showed normal recent and remote memory, and that Plaintiff had not alleged any problems with memory or following instructions. [R19 (citing R608, 630, 1422-1477)].

Additionally, the ALJ found that Plaintiff had a moderate limitation in interacting with others, noting that treatment records showed her behavior, mood, and affect were all within normal limits, with the Plaintiff alleging that she "gets along fine with bosses and landlords." [R20 (citing R608-09, 614, 630-31, 1311, 1356, 1423, 1426-32)]. The ALJ found that Plaintiff also had a moderate limitation with concentrating, persisting, and maintaining pace, noting again her Prozac prescription, and citing to an ER psychiatric exam that described normal concentration. [R20 (citing R614, 1403-1421)]. The ALJ also noted that Plaintiff alleged difficulty with completing tasks due to her pain. [R20]. The ALJ further noted that treatment records described Plaintiff's judgment as good and her insight as normal. [R20 (citing R614, 1423, 1426-32)]. Ultimately, the ALJ concluded that Plaintiff's mental impairment did not cause at least two marked limitations or one extreme limitation, and that there was no medically documented history of her

disorders over a period of at least 2 years with evidence of both ongoing mental health treatment that diminishes her symptoms and marginal adjustment. [R20]. The ALJ stated that the RFC assessment reflected the degree of limitation that he found in his mental function analysis. [R20].

As to the RFC assessment, the ALJ acknowledged Plaintiff's testimony that she suffered back and neck injuries during an altercation with police officers in 2013 and later fell down a flight of metal steps in 2016. [R21-22]. The ALJ also acknowledged Plaintiff's testimony that her pain was extreme, that she could stand 20 minutes at most and sit for 30, and that she could walk 20 paces with a cane and 10 paces without before needing to rest. [R21]. The ALJ acknowledged Plaintiff's testimony that she could lift 10 pounds at most due to abdominal pain caused by the mesh in her abdomen and her testimony regarding the accommodations of her current employer. [R21]. The ALJ then concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record evidence. [R22].

The ALJ explained that the medical record included "lots of emergency room [visits], little for significant objective findings, and no evidence of medical care in about 18 months," corresponding roughly with when Plaintiff became employed as a security officer. [R22]. The ALJ reviewed Plaintiff's medical records in detail,

25

beginning with an ER visit following her police altercation in 2014 and concluding with March 2018 primary care visits. [*See* R22-29]. The ALJ noted that there were no further records of follow up visits for pain management following a June 2015 visit, nor were there ongoing complaints or treatment for her pain. [R25-26].

The ALJ next turned to a consultative examination performed on August 8, 2015, noting that Plaintiff ambulated without difficulty and without an assistive device; had difficulty bending over, and had normal strength, grip, and range of motion, except in her cervical and lumbar spine. [R26]. The ALJ concluded that the consultative examiner's opinion that Plaintiff had limitations with reaching, handling, and grasping was entitled to little weight since the examiner also indicated that Plaintiff's fine and gross coordination were normal. [R26]. At an ER visit 10 days later, the ALJ noted, Plaintiff reported not taking any of her prescribed medications for pain. [R26]. The ALJ generally noted that, "as shown throughout various ER visits and other treatment records," the Plaintiff has a normal gait and normal 5/5 strength in all extremities. Exams consistently describe normal range of motion of the extremities, full range of motion of the neck, and full range of motion of the back, although subjective tenderness is noted to palpitation of the lumbar spine." [R28-29]. The ALJ concluded that Plaintiff's

imaging results were "not very persuasive," as CT scans of the cervical spine were normal and a CT scan of her lumbar spine showed a single, mild disc bulge.  [R29].

As to Dr. Houser's opinion, the ALJ concluded that Dr. Houser's statement that Plaintiff had lower back pain severe enough to frequently interfere with simple tasks and that she could only perform minimal activity for short periods of time was not supported by either his own treatment records or other treatment records, with the ALJ noting that Plaintiff did not complain of back pain at office visits between August 2017 and March 2018.  [R29].  The ALJ pointed to Dr. Houser's notes from Plaintiff's last visit with him on March 30, 2018, in which she reported neck stiffness for one week and alleged neck pain and disability, with Dr. Houser opining that her range of motion was normal.  [R29].  The ALJ noted another unsigned statement from Dr. Houser in which he opined that Plaintiff's condition warranted extreme limitations and that she had an impairment that could reasonably be expected to produce pain at a level precluding full-time work activity, with the ALJ concluding that the described limitations were not supported by any medical evidence in the record and were therefore not entitled to any weight.  [R29].

In particular, the ALJ concluded that although some evidence established underlying medical conditions capable of producing pain and some limitations, the evidence as a whole did not confirm either disabling pain or limitations arising

from Plaintiff's medical conditions, and that Plaintiff was therefore capable of performing light work with the aforementioned limitations. [R29-30]. The ALJ specifically stated that he had reviewed the entire evidentiary record and hearing testimony and that "any testimony or allegations otherwise are not consistent with the preponderance of the evidence." [R29]. On that basis, the ALJ accepted the VE's testimony and concluded that Plaintiff could perform the representative occupations of housekeeper, power screwdriver operator, and poultry dresser, all of which involve light, unskilled work, and therefore found Plaintiff was not disabled. [R30-31].

## V.    CLAIMS OF ERROR

Plaintiff first argues that the ALJ's physical RFC determination was not supported by substantial evidence because the ALJ failed to properly evaluate Drs. Houser and Greene's opinions. [Doc. 20 at 12]. Specifically, Plaintiff contends that the ALJ afforded too little weight to those opinions, despite being from examining providers, and ignored the nature of Plaintiff's impairments, mischaracterized the record evidence, and selectively chose to examine only the evidence that supported his determination. [*Id.* at 14]. As to Dr. Greene's opinion, which found reaching, handling, and grasping limitations, Plaintiff argues that the ALJ ignored evidence of scoliosis, kyphosis, muscle spasms, and a reduced

cervical range of motion and impermissibly relied on other normal findings as to her hands to dismiss Dr. Greene's opinion on her ability to reach.  [*Id.*].  Plaintiff also asserts that, given the ALJ's findings of severity as to her spinal impairment, he should have considered the effect that her cervical pain had on her ability to perform work functions.  [*Id.* at 15].  On that basis, Plaintiff argues that the ALJ failed to provide a legally sufficient explanation for the weight he granted to Dr. Greene's opinion.  [*Id.* at 15-16].

As to Dr. Houser's opinion, Plaintiff contends that the ALJ erred by stating that Dr. Houser's notations contained normal findings when in fact his opinions contained no examination findings at all, resulting in a mischaracterization of the opinion.  [*Id.* at 16].  Instead, Plaintiff argues, the ALJ should have considered Dr. Houser's opinion's consistency with the record evidence as a whole, noting evidence of her decreased range of motion, pain and tenderness, and continued symptoms despite taking her prescribed medications.  [*Id.* at 16-17].  Plaintiff asserts that the ALJ's fabrication of evidence of "normal" functioning to justify according less weight to Dr. Houser's opinion is insufficient, especially in light of the fact that Dr. Houser was a treating physician.  [*Id.* at 17].  Additionally, Plaintiff argues that the ALJ's errors were harmful because each of the jobs identified at step 5 required at least frequent reaching, whereas Dr. Greene opined that Plaintiff

had reaching limitations and Dr. Houser's opinion limited Plaintiff to less than sedentary work.  [*Id.*].

Second, Plaintiff contends that the ALJ erred by failing to obtain medical opinion evidence as to what effect Plaintiff's mental impairment had on her work abilities, despite determining that she had a severe mental impairment at step two. [*Id.* at 18].  Plaintiff argues that the record was devoid of any medical opinion evidence as to her mental impairments, which triggered the ALJ's duty to complete the record by contacting Plaintiff's providers for additional information or ordering a consultative examination.  [*Id.* at 19].  On that basis, Plaintiff asserts that the ALJ erred by determining that she maintained the ability to concentrate, persist, and maintain pace to perform simple instructions without supporting evidence.  [*Id.*].

Additionally, Plaintiff notes that under Eleventh Circuit precedent, a limitation to simple work does not account for findings that the claimant has the ability to concentrate, persist, and maintain pace absent medical evidence supporting the findings. [*Id.* at 19-20]  To that end, Plaintiff contends that the ALJ further erred by failing to question the VE regarding the availability of jobs for a hypothetical individual with the moderate limitations that he found Plaintiff had at step three.  [*Id.* at 20-21].  Without such testimony, Plaintiff argues, the VE's testimony that Plaintiff could perform the jobs identified at step five cannot be

considered substantial evidence. [*Id.*]. Therefore, Plaintiff asserts that because the RFC failed to incorporate all of the limitations identified by the ALJ, it was not supported by substantial evidence. [*Id.* at 21].

As to the first issue, the Commissioner responds that substantial evidence supports the ALJ's assessment of Drs. Houser and Greene's opinions. [Doc. 21 at 7]. The Commissioner argues that the ALJ reasonably discounted Dr. Greene's opinion that Plaintiff had limitations with reaching, handling, and grasping as inconsistent with his own examination findings, and that the ALJ followed the medical source opinion regulations in doing so. [*Id.* at 8-9]. Specifically, the Commissioner points to Dr. Greene's findings that Plaintiff had 10/10 fine and gross manipulation skills in both hands, 5/5 grip strength in both hands, full strength in all extremities, and a normal range of motion in all areas except her spine. [*Id.* at 10]. Additionally, the Commissioner asserts that the opinions of Drs. Green-Muldrow and Medina—relying on record evidence consistent with their opinions—supported the ALJ's decision to discount Dr. Greene's opinion, since Drs. Green-Muldrow and Medina each considered Dr. Greene's opinion and found that it did not warrant a finding of manipulative limitations.[20] [*Id.* at 11].

---

[20]     Based on a review of the record, it appears that Drs. Green-Muldrow and Medina were employed to make a disability determination on Plaintiff's claim

The Commissioner further contends that this Court may not reweigh the evidence in response to Plaintiff's contentions that some evidence undermines the ALJ's findings as to her limitations. [*Id.* at 11-12, 16]. In any event, the Commissioner argues, the evidence Plaintiff points to does not undermine the substantial evidence supporting the ALJ's decision, first because diagnoses alone do not establish a particular functional limitation. [*Id.* at 12]. Second, the Commissioner contends that Plaintiff ignored Dr. Greene's findings that she had normal range of motion in her shoulder, elbow, and wrist, and had normal strength, grip, and gross manipulation. [*Id.*].

Similarly, the Commissioner asserts that the ALJ properly discounted Dr. Houser's opinion because it was not supported by his own treatment records. [*Id.* at 13-14]. The Commissioner points to Dr. Houser's notes that Plaintiff could not turn her head without feeling pain that was a 10 out of 10 on the pain scale but noted a normal range of motion in her neck and cervical spine during the same visit, and also notes that Plaintiff did not report lower back pain at that visit, either. [*Id.* at 14]. The Commissioner further argues that other records from Dr. Houser's clinic support the ALJ's rationale and that Plaintiff has not cited any treatment

---

at the initial and reconsideration levels. [*See* R343-55, 359-65].

records supporting Dr. Houser's opinion.  [*See id.* at 15-16].  The Commissioner contends that the ALJ is not required to cite to every factor in its decision and that the lack of evidentiary support for Dr. Houser's opinion constituted good cause for discounting it.  [*Id.* at 16].

As to the second issue, the Commissioner responds that it was Plaintiff's burden to prove her mental disability, not the Commissioner's.  [*Id.* at 17].  The Commissioner further argues that the ALJ was not required to base his mental RFC determination on a medical opinion.  [*Id.* at 18].  Additionally, the Commissioner argues that the ALJ was not required either to order a consultative examination or to contact Plaintiff's treating physicians, as the regulations state only that an ALJ "may" do those things.  [*Id.* at 18-19].  The Commissioner points out that Plaintiff was represented by counsel at the hearing and asserts on that basis that the ALJ had no special duty to develop the record, especially considering that Plaintiff's counsel did not ask the ALJ to order a consultative examination or subpoena information from a treating physician.  [*Id.* at 19].

Regardless, the Commissioner contends that the record contained sufficient evidence for the ALJ to assess Plaintiff's mental RFC, including treatment records showing her memory, concentration, behavior, mood, and affect were all within normal limits.  [*Id.* at 20].  The Commissioner argues that the ALJ's mental RFC

determination generously accommodated Plaintiff's mental impairments in light of the record evidence.  [*Id.*].  Finally, the Commissioner asserts that, even if this Court disagrees with the ALJ's resolution of the factual issues and would resolve them differently, the decision is due to be affirmed because it is supported by substantial evidence.  [*Id.* at 20-21].

Plaintiff replies that, as to Dr. Greene's opinion, the Commissioner failed to acknowledge any examination findings not supportive of the ALJ's decision, compounding the ALJ's error.  [Doc. 21 at 1-2].  Plaintiff reiterates that the ALJ was not permitted to ignore those findings and base his decision only on the findings that supported his rationale without some well-reasoned explanation for doing so.  [*Id.* at 3].  Plaintiff next contends that she is not asking the Court to reweigh the evidence but instead to find, based on the record evidence, that the ALJ's physical RFC was not supported by substantial evidence, including the objective findings of record.  [*Id.* at 4].

Plaintiff additionally asserts that Dr. Houser did not conduct a musculoskeletal examination and that the Commissioner's contention that Dr. Houser's examination resulted in normal findings was therefore misleading.  [*Id.* at 5-6].  Plaintiff concludes as that the Commissioner may not rely on post hoc

rationalizations for the ALJ's determination by citing to evidence that the ALJ did not discuss.  [*Id.* at 4-6].

      *A.*     *Physical RFC Determination Challenge*

Under the regulations applicable to Plaintiff's claim for benefits, the ALJ should assign controlling weight to the opinion of a treating physician unless he supplies a good reason for assigning the opinion less weight. 20 C.F.R. § 404.1527(c)(2).[21]  "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019).  Failure to clearly articulate good cause for discounting the weight of a treating opinion constitutes reversible error, *see id.*, but the Court will not second guess the weight assigned by an ALJ to a treating physician's opinion so long as he articulates a specific justification for it.  *Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 823 (11th Cir. 2015).

---

[21]     Although 20 C.F.R. § 404.1527 has been superseded, it remains applicable to cases such as Plaintiff's that were filed prior to March 27, 2017. 20 C.F.R. § 404.1527 (2017).

In determining the weight of medical opinions generally, the ALJ must consider: (1) the examining relationship; (2) the treatment relationship; (3) evidence supporting the conclusions; (4) the consistency of the opinion with the record as a whole; (5) the medical expert's area of specialty; and (6) other factors which tend to support or contradict the medical opinion, including the amount of understanding of disability programs and the familiarity of the medical source with information in the claimant's case record.   20 C.F.R. § 404.1527(c)(1)-(6), 416.927(c)(1)-(6).   Medical opinions about a claimant's abilities or limitations are relevant evidence but are not determinative because the ALJ has the sole responsibility for assessing the claimant's RFC.   20 C.F.R. §§ 404.1527(d), 416.927(d).

The ALJ is not required to address every piece of evidence so long as the decision sufficiently enables the Court to conclude that the Commissioner considered Plaintiff's medical condition as a whole.   *Moncrief v. Astrue*, 300 Fed. Appx. 879, 881 (11th Cir. Dec. 1, 2008) (affirming the ALJ's decision despite the plaintiff's contention that the ALJ had ignored evidence favorable to her) (citing *Dyer*, 395 F.3d at 1211); *see also McLain v. Comm'r, Soc. Sec. Admin.*, 676 Fed. Appx. 935, 937-38 (11th Cir. Jan. 20, 2017) (same) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).   An ALJ may not

pick and choose which evidence he considers in making a disability determination. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence."). Additionally, the ALJ is required to build an accurate and logical bridge from the record evidence to his conclusion. *Angelita O. v. Kijakazi*, No. 1-20-cv-00034, 2021 WL 4146085 at *18 (N.D. Ga. Sept. 13, 2021).

As to the first issue, the Court is persuaded that that substantial evidence supports the ALJ's physical RFC determination and that the ALJ properly discounted the opinions of Drs. Greene and Houser. First, the ALJ's conclusion that Dr. Greene's opinion was both internally inconsistent and inconsistent with the record evidence was correct and reflected an appropriate application of the factors in 20 C.F.R. § 404.1527(c)(1)-(6), 416.927(c)(1)-(6). The ALJ compared Plaintiff's self-report to Dr. Greene, which included complaints of severe pain in her cervical spine, with his examination findings, which noted that she ambulated without difficulty, could walk on her toes, squat and recover, and had normal range of motion except in her cervical and lumbar spine. [*See* R26, 822-24]. The ALJ noted that, although Dr. Greene reported Plaintiff had full grip strength and extremity strength, he nonetheless opined that she had limitations with her ability to reach, handle, or grasp, while failing to conclude that any postural limitations

37

due to her decreased spinal range of motion were warranted.  [*See* R26, 822-25]; 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4) (noting that an ALJ should consider a medical opinion's internal supportability and consistency with the entire record).

The ALJ's conclusion that Dr. Greene's limitation opinion was entitled to little weight is supported by the record evidence that Plaintiff had normal grip strength, [*See* R707], and a review of the record does not reveal any evidence supporting difficulty with reaching.  In addition, Dr. Greene's opinion on Plaintiff's limitations, even if credible, would not be determinative because Plaintiff's RFC assessment was a matter reserved solely to the ALJ.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  In effect, Plaintiff's arguments regarding the ALJ's assessment of Dr. Greene's opinion ask the Court to review the record and reweigh the evidence in her favor, which is a task the Court may not do.  *See Dyer*, 395 F.3d at 1210. For example, Plaintiff complains that the ALJ should have considered the effect of her cervical spinal pain on her work abilities, despite the ALJ's detailed, nine-page review of the record evidence, including explanations as to why he concluded Plaintiff's back pain was not disabling.  [*See* R22-31].  Similarly, Plaintiff's claims that the ALJ selectively considered only evidence supporting its decision are both unfounded and unsupported by the law of this Circuit squarely holding that an ALJ

is not required to discuss every piece of evidence considered. *See Moncrief*, 300 Fed. Appx. at 881. The Court is satisfied that the ALJ considered Plaintiff's medical conditions as a whole in making his physical RFC assessment, and Plaintiff's dissatisfaction with the balance of the evidence in the Commissioner's favor does little to persuade the Court otherwise. *See id.* (affirming the ALJ's decision despite the plaintiff's contentions that the ALJ ignored evidence favorable to her).

As to Dr. Houser's opinion, the undersigned is perplexed by Plaintiff's arguments both that this opinion was entitled to greater weight because Dr. Houser was an examining physician, and that Dr. Houser never conducted any examinations of her at all. [*See* Doc. 20 at 14, 16-17]. The ALJ's conclusion that Dr. Houser's opinion was not entitled to any weight was supported by good cause. *See Schink*, 935 F.3d at 1259 (holding that good cause for discounting a treating physician's opinion exists when the opinion is not bolstered by the evidence, or the opinion is inconsistent with the physician's own medical records). Specifically, as noted by the ALJ, Dr. Houser's own treatment notes from August 2017 to March 2018 do not note any lower back pain, but in Dr. Houser's opinion dated almost a year and a half later, he inconsistently opined that Plaintiff had low back pain severe enough to interfere with simple tasks. [*See* R30, 1523-29, 1531-34]. And

at her most recent visit in March 2018, Dr. Houser inconsistently noted that Plaintiff's range of motion in her cervical spine was normal. [R1524].

While Plaintiff is correct that Dr. Houser's opinion that she suffered from relatively severe low back pain was supported by at least some evidence in the record, [*see* R762, 764-6, 775-78, 794], Plaintiff has offered no support for her strong accusation that the ALJ "fabricated" evidence of normal function and, as stated previously, it is not this Court's duty to reweigh the evidence. *See Dyer*, 395 F.3d at 1210. And this Court may not second-guess the ALJ's weight assignment to Dr. Houser's opinion, in light of the ALJ's clear articulation for doing so. *See Hunter*, 808 F.3d at 823. Finally, Plaintiff has not argued that the ALJ's physical RFC determination was not otherwise supported by substantial evidence beyond her challenges to Drs. Greene and Houser's opinions and she has therefore abandoned that potential issue. *See Sapuppo v. Allstate Fla. Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014) (holding that a legal claim or argument that has not been briefed is deemed abandoned and that mentioning an issue without providing specific argument in support is not sufficient to preserve it).

B.    *Mental RFC Determination Challenge*

In general, Plaintiff has the burden of establishing the existence of a disability, and, therefore, she is responsible for producing evidence in support of

40

her claim. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11ᵗʰ Cir. 2003). Still, the ALJ has a basic duty to develop a full and fair record, regardless of whether a claimant is represented by counsel. *Ellison*, 355 F.3d at 1276.

The ALJ should recontact medical sources when the evidence received from those sources are inadequate to determine whether the plaintiff is disabled. *Fries v. Comm'r, Soc. Sec. Admin.*, 196 Fed. Appx. 827, 830 (11ᵗʰ Cir. Sept. 14, 2006); 20 C.F.R. § 404.1512(b). And the ALJ may order a consultative examination when the record establishes that such an examination is necessary to render an informed decision, and the medical sources do not provide sufficient medical evidence. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11ᵗʰ Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11ᵗʰ Cir. 1984); *Ford v. Sec'y of Health & Human Servs.*, 659 F.2d 66, 69 (5ᵗʰ Cir. 1981) (Unit B); *see also* 20 C.F.R. §§ 404.1512(b)(2), 416.917; *Fries*, 196 Fed. Appx. at 830. The ALJ is not required to base his RFC assessment on a medical opinion and may instead base it on the other medical record evidence. *See Green v. Soc. Sec. Admin.*, 223 Fed. Appx. 915, 923-24 (11ᵗʰ Cir. May 2, 2007).

In *Winschel v. Comm'r, Soc. Sec. Admin.*, 631 F.3d 1176, 1180 (11ᵗʰ Cir. 2011), the Eleventh Circuit held that an ALJ does not automatically account for a

41

claimant's moderate limitations in concentration, persistence, or pace by restricting the hypothetical question to simple, routine tasks or unskilled work.  However, the Eleventh Circuit and this Court have held in myriad opinions that, *Winschel* notwithstanding, a hypothetical question could sufficiently account for even moderate impairments in concentration, persistence, or pace if it includes a limitation to unskilled or simple work or routine tasks and the medical evidence demonstrates that the claimant has the ability to perform those tasks despite the impairments.  *See, e.g.*, *Ybarra v. Comm'r of Soc. Sec.*, 658 Fed. Appx. 538, 542 (11th Cir. Sept. 29, 2016); *Carpenter v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 482, 490 (11th Cir. Aug. 17, 2015); *Thornton v. Comm'r Soc. Sec. Admin.*, 597 Fed. Appx. 604, 612 (11th Cir. Feb. 11, 2015); *Markuske v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 762, 767 (11th Cir. July 7, 2014); *Lee v. Comm'r, Soc. Sec. Admin.*, 551 Fed. Appx. 539, 541 (11th Cir. Jan. 8, 2014); *Neefe v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 1006, 1007 (11th Cir. Sept. 27, 2013); *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. Appx. 869, 872 (11th Cir. Apr. 11, 2011); *Smith v. Colvin*, No. 1:14-cv-03139-AJB, 2016 WL 1211952, at *16-17 (N.D. Ga. Mar. 28, 2016) (Baverman, M.J.).

As to the second issue, the Court agrees with the Commissioner that the ALJ's RFC assessment as to Plaintiff's mental impairments was supported by

substantial evidence.  First, contrary to Plaintiff's arguments, the ALJ was not obligated to contact her medical providers or order a consultative examination in order to develop a record as to her mental health impairments because the available medical evidence was adequate to determine that Plaintiff was not disabled on account of her depression and anxiety.  *See* 20 C.F.R. §§ 404.1512(b); 416.917; *Holladay*, 848 F.2d at 1210; *Fries*, 196 Fed. Appx. at 830.  And the ALJ was free to base his mental RFC assessment on the medical evidence of record despite the lack of a medical source opinion as to that issue.  *See Green*, 223 Fed. Appx. at 923-24.  However, the undersigned notes that the Commissioner's apparent argument that the ALJ was discharged of his duty to develop the record because Plaintiff was counseled is incorrect, as the ALJ has a general duty to develop a full and fair record regardless of whether a claimant is represented.  *See Ellison*, 355 F.3d at 1276.

The medical record evidence showed that, although Plaintiff suffered from depression and anxiety, those conditions were conservatively managed with Prozac and no other medications or treatments were ordered.  [*See* R794-95, 1418, 1403, 1523-34].  Plaintiff testified as much at the hearing, stating that she had no issues getting along with people but had some issues with concentration due to worrying, and that her mental health was managed with medication prescribed by her primary

care provider.  [R55-56].  The ALJ's conclusion that Plaintiff had some limitations with concentration, however, is supported by Plaintiff's testimony and limited record evidence, and the Court therefore concludes that the ALJ's determinations that Plaintiff had moderate limitations with concentrating, persisting, or maintaining pace, and with interacting with others, in addition to a mild limitation with understanding, remembering, or applying information, were a generous interpretation of the evidence in Plaintiff's favor.  [*See* R19-20, 55-56, 1403].

In any event, it was Plaintiff's burden to establish the existence of a disability based on her mental impairments, and it was likewise her responsibility to produce evidence in support of her claim. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *Ellison*, 355 F.3d at 1276.  But here, Plaintiff has not so much as argued what a mental health consultative examination, if ordered, might have shown, how her mental health impairments impacted her ability to perform the representative occupations identified by the VE, or what mental health limitations the ALJ failed to include in his RFC determination. *See Sapuppo*, 739 F.3d at 681-82 (holding that arguments not briefed are deemed abandoned). Indeed, the crux of this portion of Plaintiff's argument seems to be, without further elaboration, that the ALJ failed to incorporate the mental health limitations he found at step three into his RFC assessment, but Plaintiff has failed to offer

44

argument as to what specific limitations should have been included in that assessment. [*See* Doc. 20 at 20-21].

Second, and relatedly, the ALJ's determination that Plaintiff could perform the representative occupations of housekeeper, power screwdriver operator, or poultry dresser sufficiently accommodated Plaintiff because those positions are unskilled, and Plaintiff has not alleged that, even with more specific mental limitations incorporated into the RFC assessment, she would be unable to perform unskilled work or follow simple instructions. *See Winschel*, 631 F.3d at 1180; *see also Sapuppo*, 739 F.3d at 681-82. Moreover, as unskilled work requires performing simple duties that can be learned on the job, understanding, remembering, and carrying out simple instructions, and responding appropriately to supervisors and coworkers, *see* 20 C.F.R. §§ 404.1568(a), 416.968(a); SSR 96-9p, 1996 WL 374185 (July 2, 1996), the record evidence supports a conclusion that Plaintiff is able to perform unskilled work, particularly in light of Plaintiff's testimony that she had no issues interacting with others. [*See* R55]. Accordingly, the Court concludes that the ALJ's mental RFC assessment sufficiently accommodated Plaintiff's mental limitations and was supported by substantial evidence.

45

## VI.   <u>CONCLUSION</u>

In conclusion, for all of the reasons stated above, the Court **AFFIRMS** the final decision of the Commissioner.   The Clerk is **DIRECTED** to enter final judgment in favor of the Commissioner.

**IT IS SO ORDERED and DIRECTED**, this 14th of February, 2022.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

46